S11A1435. ROBBINS et al. v. SUPERMARKET EQUIPMENT SALES, LLC.
S11A1583. SMITH v. SUPERMARKET EQUIPMENT SALES, LLC.

(722 SE2d 55)

BENHAM, Justice.

Appellee Supermarket Equipment Sales, LLC (SES) is a company that, among other economic endeavors, makes and supplies outer components or "skins" for grocery store refrigeration units. SES was formed on October 13, 2009, when its immediate predecessor Supermarket Equipment Resale, Inc. (SER) was foreclosed upon by its bank. At the time of foreclosure, a deal was structured such that SES leased, with an option to buy, SER's real estate from the foreclosing bank, and SES took out a loan from the foreclosing bank to buy SER's assets. As part of the deal, the original owner of SER remained personally liable for the note between SES and the foreclosing bank. According to written corporate minutes dated October 13, 2009, the SER board of directors, as its final act, assigned its trade secrets and proprietary information to SES. These trade secrets and proprietary information allegedly included a library of drawings of refrigeration skins SER had accumulated in the course of eight years conducting its business.

Appellant Daniel Robbins worked for SER prior to its foreclosure. He left SER and began his own refrigeration skin business, appellant TCD Squared d/b/a Supermarket Specialty Products (SSP), in or about February 2009. At SSP, Robbins would take orders, draw the skins to specification, have the skin pieces manufactured, and hire contractors for installation. Robbins paid Custom Metal to manufacture the metal pieces used for the skins based on SSP

drawings. During the course of the litigation, Custom Metal produced 1,500 drawings it received from SSP. Appellant Robbins testified that he drew the 1,500 drawings. SES, however, alleges these 1,500 drawings are its proprietary information which it obtained when SER foreclosed.

Appellant Charles David Jensen was employed by SER and then SES over a period of approximately eight years, from 2002 to June 2010. Upon leaving SES, Jensen began working for SSP in June 2010. While at SER/SES, Jensen was the director of operations and managed the personnel in the department which made drawings for re-skinning. Jensen testified that he reviewed the 1,500 drawings in order to assist Robbins.

Appellant David Smith worked as a comptroller and accountant for SER and SES. He also did some book-keeping for SSP during and after his employment with SER and SES, but he was never an employee of SSP. During the litigation, SES hired a forensic investigator to investigate evidence of misappropriation by examining SER/SES computers. The forensic investigator found that on April 8, 2009, prior to the SER foreclosure, an e-mail was sent from Smith's work e-mail account to a Yahoo account[1] owned by Smith. The e-mail contained an attachment of 44 drawings stamped as belonging to SSP and initialed by appellant Jensen. Trevor Breedlove, who worked for SER and SES as an executive, testified at the injunction hearing that he examined the drawings and found that none of the 44 drawings were identical to drawings owned by SER/SES, but he testified that the drawings were "similar looking" to SER/SES documents. Appellant Smith did not testify at the preliminary injunction hearing, and there was no evidence presented on how Smith obtained the 44 drawings or what he did with them after sending them to his Yahoo account.

SES sued appellants for injunctive relief under the Georgia Trade Secrets Act (GTSA), OCGA § 10-1-760 et seq. After holding the injunction hearing, the trial court made the following relevant findings:

i. SES had standing to sue because it came to be the owner of SER's drawings by the foreclosure of SER and by its purchase of SER's assets from the foreclosing bank.

ii. All the drawings at issue were the proprietary and confidential information of SES.

iii. The drawings were misappropriated.

---

[1] Yahoo is an internet service provider which allows individuals to maintain personal e-mail accounts.

    iv. The drawings were *not* "trade secrets" under the GTSA because SES failed to take reasonable efforts to maintain the secrecy of the drawings as required by OCGA § 10-1-761 (4) (B).

    v. The preemption clause of OCGA § 10-1-767 (a) was inapplicable because the drawings were not trade secrets.

Although SES did not file a claim or request any relief outside the scope of the GTSA, the trial court concluded SES was entitled to general equitable relief under OCGA § 9-5-1 because the trial court concluded SES had suffered an irreparable injury and was without an adequate remedy at law. Therefore, the trial court entered an injunction barring SSP from using the drawings in its business and ordering the drawings to be submitted to the court.

Appellants now appeal contending the trial court erred when it found SES had standing to sue and when it granted equitable relief after finding that the preemption clause of the GTSA was inapplicable. For reasons set forth in Division 2 below, we agree the trial court committed reversible error when it granted equitable relief to SES.

1. Appellants contend that SES lacks standing to pursue this action because it did not exist when the information at issue was allegedly misappropriated in 2009 prior to the foreclosure. Based on the unique facts of this case, we disagree. SES is essentially a restructured SER. When SER was foreclosed, its real estate assets were immediately leased to SES. SES also purchased SER's other assets from the foreclosing bank and the former owner of SER remained personally liable for SES's note. Testimony presented at the injunction hearing revealed that SES continued to conduct the same business with the same employees of SER. SER's last official act of business was to transfer its proprietary and trade secret information to SES in its executive minutes which had been reduced to writing. SES and SER are the same entity for the purpose of standing. See, e.g., *Outdoor Systems, Inc. v. Wood*, 247 Ga. App. 287 (1) (b) (543 SE2d 414) (2000). See also *City of Roswell v. Eller Media Co.*, 275 Ga. 379 (2) (566 SE2d 659) (2002). Therefore, the trial court did not err when it declined to deny SES's action for lack of standing.

2. Appellants contend that the GTSA was appellee's exclusive remedy and that the trial court erred when it granted SES general equitable relief in spite of the GTSA's preemption provision (OCGA § 10-1-767 (a)[2]). Equitable relief is at the trial court's discretion and

---

[2] OCGA § 10-1-767 (a) states: "Except as provided in subsection (b) of this Code section, this article shall supersede conflicting tort, restitutionary, and other laws of this state

will not be overturned on appeal unless there is a manifest abuse of discretion. *Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553 (2) (501 SE2d 501) (1998); *Slautterback v. Intech Management Svcs.*, 247 Ga. 762, 766 (279 SE2d 701) (1981) ("injunctions will not be interfered with in the absence of manifest abuse"). For reasons set forth herein, we find the trial court manifestly abused its discretion when it granted equitable relief to SES.

(a) The trial court's reliance on *Owens v. Ink Wizard Tattoos*, 272 Ga. 728 (533 SE2d 722) (2000) as the basis for granting equitable relief was erroneous. *Owens v. Ink Wizard Tattoos* is factually distinguishable from this case. In that case, the ex-employees of Ink Wizard Tattoos stole a pre-printed tattoo ink design which had been purchased by Ink Wizard Tattoos per an agreement with the tattoo's designer. The agreement prohibited Ink Wizard Tattoos from allowing any other entity to have use of the design. Ink Wizard Tattoos had no remedy at law because it was susceptible to breach of its agreement with the designer each time the ex-employees copied and used the stolen ink design. Based on these facts, the case is not a trade secrets case or even a case of misappropriating the proprietary information of a former employer. The design was not the proprietary information of Ink Wizard Tattoos, rather Ink Wizard Tattoos effectively had a licensing agreement that was being violated by the ex-employees' theft and use of the design. Enjoining the ex-employees' behavior was the only means to prevent continuing breach of the contract Ink Wizard Tattoos had with a third party. The relief was designed to prevent a breach of contract rather than designed to remedy the misappropriation of confidential or proprietary information. Indeed, the design was not confidential in nature inasmuch as customers selected the design for the purposes of having it tattooed on their bodies. See *Wachovia Ins. Svcs. v. Fallon*, 299 Ga. App. 440 (3) (c) (682 SE2d 657) (2009) (brochures were not trade secrets because they were made available to the public). Accordingly, *Owens v. Ink Wizard Tattoos* is irrelevant to the case at bar, and the trial court abused its discretion when it relied on the case in support of its grant of equitable relief to SES.

(b) The GTSA supersedes all conflicting laws providing restitution or civil remedies for the misappropriation of trade secrets. OCGA § 10-1-767 (a). See also *Opteum Financial Svcs., LLC v. Spain*, 406 FSupp.2d 1378, 1380 (N.D. Ga. 2005). For the GTSA to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution simply because the information does not qualify as a trade secret under the act. See id. Indeed, the only

providing civil remedies for misappropriation of a trade secret."

exceptions to the exclusivity of the GTSA are contained in OCGA § 10-1-767 (b)[3] and that provision does not except from the scope of the GTSA claims of equitable relief under OCGA § 9-5-1 for the misappropriation of proprietary or confidential information. Rather, the "GTSA preempts claims [that] rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret." *ProNvest, Inc. v. Levy*, 307 Ga. App. 450 (2) (705 SE2d 204) (2010).

In this case, given the absence of a finding that the drawings were trade secrets as defined by the GTSA, there was no basis to provide injunctive relief to SES. See *Smith v. Mid-State Nurses*, 261 Ga. 208 (403 SE2d 789) (1991); *Allen v. Hub Cap Heaven*, 225 Ga. App. 533 (3) (484 SE2d 259) (1997). See also *Leo Publications v. Reid*, 265 Ga. 561 (458 SE2d 651) (1995) (where information at issue was not a trade secret, the employer was not entitled to injunctive relief; however, employee could be required to return the employer's original customer list if in her possession). By using OCGA § 9-5-1 to provide SES the same relief based on the same allegations it would have received had the drawings qualified as trade secrets, the trial court undermined the exclusivity of the GTSA. See *Professional Energy Mgmt., Inc. v. Necaise*, 300 Ga. App. 223, 225 (684 SE2d 374) (2009) (the "purposes of the GTSA would be subverted if a plaintiff could state a claim for the misappropriation of proprietary information outside of the GTSA and thereby avoid its burdensome requirements of proof"). See also *B&F System, Inc. v. LeBlanc*, 2011 WL 4103576 at *27 (M.D. Ga. 2011) (conversion claim preempted by the GTSA where claim involved misappropriation of unprotected proprietary information); *Diamond Power Intl. v. Davidson*, 540 FSupp.2d 1322, 1345 (N.D. Ga. 2007) ("it would make little sense to go through the rigamarole of proving information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome requirements of proof"). The fact that the drawings were not ultimately found to be trade secrets under the act did not make the preemption clause inapplicable. Rather the key inquiry is whether

---

[3] OCGA § 10-1-767 (b) states as follows:
This article shall not affect:

(1) Contractual duties or remedies, whether or not based upon misappropriation of a trade secret; provided, however, that a contractual duty to maintain a trade secret or limit use of a trade secret shall not be deemed void or unenforceable solely for lack of a durational or geographical limitation on the duty;

(2) Other civil remedies that are not based upon misappropriation of a trade secret; or

(3) The definition of a trade secret contained in Code Section 16-8-13, pertaining to criminal offenses involving theft of a trade secret or criminal remedies, whether or not based upon misappropriation of a trade secret.

the same factual allegations of misappropriation are being used to obtain relief outside the GTSA. Since the trial court's award of general equitable relief under OCGA § 9-5-1 was based on the same conduct as the GTSA claim, i.e, the misappropriation of the drawings, such relief was preempted by OCGA § 10-1-767 (a). Id. Accordingly, the trial court's award of equitable relief pursuant to OCGA § 9-5-1 was a manifest abuse of discretion and must be reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 6, 2012.

*Elizabeth J. Pope*, for Charles D. Jensen.

*Maddox, Nix, Bowman & Zoeckler, John A. Nix*, for Danny R. Robbins and TC Squared, Inc.

*Crudup & Hendricks, Hillary W. Edgar*, for David G. Smith.

*Martin L. Fierman*, for Supermarket Equipment Sales, LLC.