[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hanneman Family Funeral Home & Crematorium v. Orians*, Slip Opinion No. 2023-Ohio-3687.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3687

HANNEMAN FAMILY FUNERAL HOME AND CREMATORIUM, APPELLANT AND CROSS-APPELLEE, *v*. ORIANS ET AL., APPELLEES AND CROSS-APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hanneman Family Funeral Home & Crematorium v. Orians*, Slip Opinion No. 2023-Ohio-3687.]

*Trade secrets—Ohio Uniform Trade Secrets Act, R.C. 1333.61 through 1333.69—Preemption—Information is a trade secret protected by Ohio Uniform Trade Secrets Act only if it has independent value because it is not generally known to and readily ascertainable by others and the owner has taken reasonable efforts to maintain its secrecy—Customer information was not kept secret because it was accessible to a number of employees, was provided to third parties, and was available as a public record—Tort claims for tortious interference with business contracts, tortious interference with business relationships, and conversion that were based on alleged misappropriation of trade secrets were preempted—Court of appeals' judgment affirmed.*

(No. 2022-0573—Submitted March 22, 2023—Decided October 12, 2023.)

APPEAL from the Court of Appeals for Allen County,

No. 1-21-05, 2022-Ohio-984.

_____

**KENNEDY, C.J.**

{¶ 1} In this discretionary appeal from a judgment of the Third District Court of Appeals, we consider whether information about a funeral home's customers who have preneed funeral contracts with the funeral home is a trade secret protected by the Ohio Uniform Trade Secrets Act, R.C. 1333.61 through 1333.69. We also consider whether related claims for tortious interference with business contracts, tortious interference with business relationships, and conversion are preempted by the Act.

{¶ 2} In this case, appellant and cross-appellee, Hanneman Family Funeral Home and Crematorium ("Hanneman Family"), purchased a funeral home but did not retain the funeral home's director, appellee and cross-appellant Patrick Orians. Orians copied the funeral home's customer information before accepting employment at another funeral home, appellee and cross-appellant T.R. Chiles & Sons-Laman, Inc., d.b.a. Chiles-Laman Funeral & Cremation Services ("Chiles-Laman"). Orians then used this customer information to solicit business for Chiles-Laman. Hanneman Family sued Orians and Chiles-Laman in the Allen County Court of Common Pleas, alleging misappropriation of trade secrets, tortious interference with business contracts, tortious interference with business relationships, and conversion. The trial court entered summary judgment in favor of Orians and Chiles-Laman on those claims, and the Third District Court of Appeals affirmed, 2022-Ohio-984, ¶ 4-9, 69.

{¶ 3} Information is a protected trade secret when (1) it has economic value because it is not generally known to and readily ascertainable by proper means by others who could obtain economic value from its disclosure or use and (2) the

owner has taken reasonable efforts to maintain its secrecy. R.C. 1333.61(D). But here, the customer information at issue had been provided to a third party, was accessible by a number of the funeral home's employees, and was available as a public record upon request. Therefore, the information was not protected by the Ohio Uniform Trade Secrets Act as a trade secret.

{¶ 4} Hanneman Family's tort claims for tortious interference with business contracts, tortious interference with business relationships, and conversion are also premised on Orians and Chiles-Laman's alleged misappropriation of Hanneman Family's trade secrets. However, the Ohio Uniform Trade Secrets Act expressly supersedes other civil remedies sounding in tort that are based on the misappropriation of a trade secret. Consequently, Hanneman Family's tort claims are preempted by the Act.

{¶ 5} The Third District properly affirmed the trial court's grant of summary judgment in favor of Orians and Chiles-Laman on the claims at issue here. We therefore affirm the judgment of the court of appeals.

## I. Facts and Procedural History

{¶ 6} Hanneman Family purchased several funeral homes from Service Corporation International, Inc., including Siferd-Orians Funeral Home in Lima. Orians, who was the funeral director for Siferd-Orians at the time of the purchase, learned that he would not be retained as an employee after Hanneman Family took over Siferd-Orians. Before his employment with Siferd-Orians ended, Orians copied files containing the names and addresses of Siferd-Orians's customers who had contracts prearranging their funeral services with the funeral home, which are called "preneed funeral contracts," R.C. 4717.31 et seq. After he started working for Chiles-Laman, Orians contacted approximately 100 of Siferd-Orians's customers with preneed funeral contracts and solicited them to take their business to Chiles-Laman. A large number of these customers transferred their preneed funeral contracts to Chiles-Laman.

**{¶ 7}** Hanneman Family sued Orians and Chiles-Laman for misappropriation of trade secrets, tortious interference with business contracts, tortious interference with business relationships, and conversion, among other claims. The trial court granted summary judgment in Orians and Chiles-Laman's favor, concluding that "the preneed funeral contracts and the information that Orians obtained" were not trade secrets, because the information "was not secret and was readily ascertainable by proper means by other persons." The court reasoned that the preneed-funeral-contract information was a public record that had been released by the Ohio Board of Embalmers and Funeral Directors. Further, the court determined that the related tort claims failed because Hanneman Family had not pointed to any evidence of damages that could be established to a reasonable degree of certainty.

**{¶ 8}** The Third District affirmed. It explained that summary judgment was proper on the misappropriation-of-trade-secrets claim because Siferd-Orians's (now Hanneman Family's) customer information had been disclosed to the Board of Embalmers and Funeral Directors in a report generated by a third party, which was available as a public record. 2022-Ohio-984 at ¶ 39-40. And because it determined that the customer information was not a trade secret, the court of appeals rejected Orians and Chiles-Laman's argument that the related claims for tortious interference with business contracts, tortious interference with business relationships, and conversion were preempted by the Ohio Uniform Trade Secrets Act. *Id.* at ¶ 42. The appellate court held that the tort claims failed because Hanneman Family had not satisfied the damages element of those torts, noting that Hanneman Family had not presented any evidence of lost profits and that any future lost profits were speculative. *Id.* at ¶ 49-52. The court explained that "any damage calculation is purely theoretical until the preneed funeral contract is actually realized when a preneed customer dies." *Id.* at ¶ 49.

4

{¶ 9} We accepted Hanneman Family's discretionary appeal on the following propositions of law:

> 1. Appellant's preneed contracts constitute trade secret information as the information contained in preneed contracts [is] not public information.
>
> 2. Appellant's preneed contracts do not have speculative damages and satisfy tortious interference with business relations and tortious interference with business contracts.

*See* 167 Ohio St.3d 1470, 2022-Ohio-2633, 191 N.E.3d 446.

{¶ 10} Orians and Chiles-Laman filed a cross-appeal, and we agreed to consider their sole proposition of law:

> A trade secret claim pursuant to R.C. 1331.61, et seq. displaces all common-law tort claims arising from the theft, misuse, and misappropriation of any confidential information, even when the information does not arise to the level of a "trade secret."

*See id.*

{¶ 11} Because deciding the issues under Hanneman Family's first proposition of law and Orians and Chiles-Laman's proposition of law suffices to resolve this case, we decline to address Hanneman Family's second proposition of law.

## II. Law and Analysis

### A. Standard of Review

{¶ 12} Analyzing the parties' propositions of law returns us to a familiar place: statutory interpretation. Statutory interpretation is a question of law that we

review de novo. *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 14. As we explained long ago, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12. For this reason, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 13} This case was decided on summary judgment, and "[t]his court conducts a de novo review of a summary-judgment ruling," *Bohlen v. Anadarko E & P Onshore, L.L.C.*, 150 Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, ¶ 10. Summary judgment may be granted "when no genuine issues of material fact remain to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id*.

*B. The Ohio Uniform Trade Secrets Act*

{¶ 14} Although Ohio's protection of trade secrets arose at common law, *Al Minor & Assocs., Inc. v. Martin*, 117 Ohio St.3d 58, 2008-Ohio-292, 881 N.E.2d 850, ¶ 10, in 1994, the General Assembly adopted the Uniform Trade Secrets Act drafted by the National Conference of Commissioners on Uniform State Laws, *see* Am.Sub.H.B. No. 320, 145 Ohio Laws, Part III, 5403, 5403-5407; *see also BlueEarth Biofuels, L.L.C. v. Hawaiian Elec. Co., Inc.*, 123 Haw. 314, 317, 235 P.3d 310 (2010). The Ohio Uniform Trade Secrets Act defines the term "trade secret" as

information, including * * * any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(D).

{¶ 15} This court has established a six-factor test for determining whether information constitutes a trade secret under R.C. 1333.61(D), requiring a court to consider:

"(1) [t]he extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information."

*Al Minor & Assocs.* at ¶ 16, quoting *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997), *superseded by statute on other grounds as stated in State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d

396, 732 N.E.2d 373 (2000). "An entity claiming trade secret status bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *Besser* at 400.

{¶ 16} The customer information at issue in this case was available outside the funeral home. A seller of preneed funeral contracts is required to file with the Board of Embalmers and Directors an annual report regarding existing funded preneed funeral contracts. Ohio Adm.Code 4717-10-01(A). The report is required to disclose the name of each beneficiary of the preneed funeral contract, among other information. *See* Ohio Adm.Code 4717-10-01(A)(1). When Siferd-Orians was still owned by Service Corporation International, Orians prepared this report by contacting a third party—the insurance company underwriting the preneed funeral contracts—and requesting a list of all the preneed funeral contracts that had been sold through Siferd-Orians. And when Hanneman Family purchased Siferd-Orians, it also provided to the board the names of customers in Hanneman Family's application to transfer Siferd-Orians's funeral-home license. Prior to the enactment of 2021 Am.Sub.H.B. No. 110, effective September 30, 2021, which amended Ohio's Public Records Act, R.C. 149.43, information about a funeral home's preneed funeral contracts was available from the board as a public record. Much of the information in the preneed funeral contracts was therefore readily ascertainable by the public prior to Orians's taking it.

{¶ 17} After viewing the evidence presented in the light most favorable to Hanneman Family, we conclude that there is no genuine issue of material fact regarding whether its preneed-funeral-contract information was a protected trade secret and that Orians and Chiles-Laman are entitled to judgment as a matter of law. *See Bohlen*, 150 Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, at ¶ 10. Hanneman Family failed to carry its burden to submit evidence showing that the information was valuable because it was not known to or ascertainable by others.

8

*See* R.C. 1333.61(D). Consequently, the trial court did not err in granting summary judgment in favor of Orians and Chiles-Laman on Hanneman Family's misappropriation-of-trade-secrets claim.

*C. Preemption*

**{¶ 18}** R.C. 1333.67 preempts tort claims that are based on the misappropriation of a trade secret. That statute provides:

> (A) Except as provided in division (B) of this section, sections 1333.61 to 1333.69 of the Revised Code displace conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.
>
> (B) Sections 1333.61 to 1333.69 of the Revised Code do not affect any of the following:
>
> (1) Contractual remedies, whether or not based on misappropriation of a trade secret;
>
> (2) Other civil remedies that are not based on misappropriation of a trade secret;
>
> (3) Criminal remedies, including those in other sections of [R.C. Chapter 1333], whether or not based on misappropriation of a trade secret.

**{¶ 19}** There is a split of authority regarding whether statutory language similar to that used in R.C. 1333.67 preempts all claims based on the unauthorized use of information, even when the information is not a trade secret as defined by the Uniform Trade Secrets Act. *Compare Mtge. Specialists, Inc. v. Davey*, 153 N.H. 764, 777, 904 A.2d 652 (2006) ("the [New Hampshire Uniform Trade Secrets Act] preempts claims that are based upon the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade

secret") *with Am. Biomedical Group, Inc. v. Techtrol, Inc*., 2016 OK 55, 374 P.3d 820, ¶ 23, quoting Okla.Stat.Ann. 78-92(A) ("the [Oklahoma Uniform Trade Secrets Act] displaces conflicting tort claims only for 'misappropriation of a trade secret.' It does not displace tort claims for information not meeting this definition").

{¶ 20} It is not necessary to decide this question here. Statutory language like that in R.C. 1333.67 "prevents a plaintiff from merely restating their trade secret claims as separate tort claims, " *Weins v. Sporleder*, 2000 S.D. 10, 605 N.W.2d 488, ¶ 13. Hanneman family's complaint alleged that Orians and Chiles-Laman had tortiously interfered with Hanneman Family's business contracts and business relationships by stealing "[Hanneman Family's preneed funeral] contracts including clientele names, contact information *and other trade secret information*" and by "contacting these individuals and working to obtain transfers of [the] contracts." (Emphasis added.) As for its conversion claim, Hanneman Family alleged that it owned "[preneed funeral contracts] including the *trade secret information* associated with them" and that Orians and Chiles-Laman "stole these contracts/property including clientele names, contact information *and other trade secret information*." (Emphasis added.)

{¶ 21} These tort claims are based on the same factual allegations that make up Hanneman Family's misappropriation-of-trade-secrets claim. According to Hanneman Family's complaint, Orians and Chiles-Laman's actions were tortious because Orians and Chiles-Laman stole trade secrets. The fact that the preneed-funeral-contract information is "not ultimately found to be [a] trade secret[] under the [Uniform Trade Secrets Act does] not make the preemption clause inapplicable. Rather, the key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the [Uniform Trade Secrets Act]," *Robbins v. Supermarket Equip. Sales, L.L.C.*, 290 Ga. 462, 466-467, 722 S.E.2d 55 (2012). Because Hanneman Family's tort claims at issue here are premised on allegations

of misappropriated trade secrets, they are preempted by the Ohio Uniform Trade Secrets Act. The trial court's entry of summary judgment in favor of Orians and Chiles-Laman on these tort claims was proper, albeit for reasons different from those stated by the trial court and the appellate court.

### III. Conclusion

{¶ 22} The Ohio Uniform Trade Secrets Act provides a civil remedy to protect trade secrets and preempts other tort-law remedies that are based on the misappropriation of a trade secret. However, information is a trade secret and protected by the Act only if the information has independent value because it is not generally known to and readily ascertainable by others and the owner has taken reasonable efforts to maintain its secrecy. R.C. 1333.61(D).

{¶ 23} The customer information of Hanneman Family at issue here was not kept secret. Rather, this information was accessible to a number of employees and was provided to third parties, and it was available as a public record to anyone who requested it from the state. Therefore, the customer information was not a trade secret protected by the Ohio Uniform Trade Secrets Act. And because Hanneman Family's tort claims for tortious interference with business contracts, tortious interference with business relationships, and conversion were based on the alleged misappropriation of a trade secret, they are preempted by the Act.

{¶ 24} We therefore affirm the judgment of the Third District Court of Appeals.

Judgment affirmed.

DEWINE, BRUNNER, and DETERS, JJ., concur.

FISCHER, J., concurs in part and concurs in the judgment, with an opinion joined by DONNELLY and STEWART, JJ.

_____

**FISCHER, J., concurring in part and concurring in the judgment.**

**{¶ 25}** In this case, we accepted the discretionary appeal of appellant and cross-appellee, Hanneman Family Funeral Home and Crematorium ("Hanneman Family"), and the cross-appeal of appellees and cross-appellants, Patrick Orians and T.R. Chiles & Sons-Laman, Inc., d.b.a. Chiles-Laman Funeral & Cremation Services ("Chiles-Laman"). I agree with the majority's decisions to resolve Hanneman Family's first proposition of law and to hold that Hanneman Family cannot prevail under the Ohio Uniform Trade Secrets Act (or "the Act"), R.C. 1333.61 through 1333.69, because the customer information at issue is not a trade secret. Thus, I join that part of the majority opinion.

**{¶ 26}** I write separately to address the issue of preemption under the Act. The majority opinion concludes that it is not necessary for this court to determine whether Ohio will join the majority of other jurisdictions and hold that claims based on the unauthorized use of information are preempted by the Act, but the majority goes on to find that Hanneman Family's tort claims *are* preempted because they are premised on allegations of misappropriation of trade secrets. This implicit acceptance of one approach to the preemption analysis without expressly stating which approach this court has adopted is confusing. Additionally, we must answer the question whether claims based on the unauthorized use of information are preempted by the Act because the answer necessarily determines whether Hanneman Family's tort claims are preempted, since Hanneman Family does not have a successful trade-secrets claim under the Act.

**{¶ 27}** This court should join the majority of other jurisdictions and hold that in Ohio, unauthorized-use-of-information claims that are not otherwise preserved by state law are preempted by the Ohio Uniform Trade Secrets Act. And we should conclude that Hanneman Family's tort claims are preempted because they are based solely on the unauthorized use of its information as alleged in its

misappropriation-of-trade-secrets claim. Because the majority opinion reaches the right result, I also concur in the judgment.

**This court may address the cross-appeal issue before addressing Hanneman Family's second proposition of law**

{¶ 28} Hanneman Family's second proposition of law involves the issue of damages in relation to its tort claims, which allege tortious interference with business relationships, tortious interference with business contracts, and conversion. Hanneman Family maintains that the preneed contracts that were transferred to Chiles-Laman "do not have speculative damages" and thus the trial court erred in dismissing its tort claims.

{¶ 29} Orians and Chiles-Laman disagree with Hanneman Family on the damages issue and maintain that Hanneman Family's tort claims fail because they are preempted by the Ohio Uniform Trade Secrets Act. We accepted the cross-appeal filed by Orians and Chiles-Laman, in which they argue that tort claims arising from the theft, misuse, and misappropriation of any confidential information are preempted by the Act, even when such information does not constitute a trade secret under the Act.

{¶ 30} The majority opinion chooses to address the cross-appeal issue, because "deciding the issues under Hanneman Family's first proposition of law and [the cross-appeal issue] suffices to resolve this case," and the majority opinion "decline[s] to address Hanneman Family's second proposition of law." Majority opinion, ¶ 11. Generally, we will not consider the appeal of a party who has not been aggrieved by the final order, because that party lacks standing. *See State v. Bates*, 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610, ¶ 20 ("[a] party that benefits from an error cannot be the party aggrieved"); *Ohio Contract Carriers Assn. v. Pub. Util. Comm.*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942). In this case, the appellate court adjudicated Hanneman Family's tort claims in favor of Orians and Chiles-Laman. 2022-Ohio-984, ¶ 44-53. Thus, under our general rule,

Orians and Chiles-Laman have no standing to appeal the decision on the preemption issue.

**{¶ 31}** However, for us to reach Hanneman Family's second proposition of law concerning damages related to its tort claims, we need to determine whether the tort claims were preempted—a threshold issue that has been briefed by the parties. We have permitted parties to assert by cross-appeal alternative grounds for affirmance of the lower court's decision. *See, e.g.*, *Dana Corp. v. Testa*, 145 Ohio St.3d 1441, 2016-Ohio-1596, 48 N.E.3d 581. Therefore, I agree with the majority opinion that it is appropriate to first determine whether Hanneman Family's tort claims are preempted by the Ohio Uniform Trade Secrets Act. We need only reach Hanneman Family's second proposition of law if its torts claims are not preempted by the Act.

### Hanneman Family's tort claims are preempted by the Ohio Uniform Trade Secrets Act

**{¶ 32}** The General Assembly adopted the Uniform Trade Secrets Act when it enacted R.C. 1333.61 through 1333.69, the Ohio Uniform Trade Secrets Act. *Al Minor & Assocs., Inc. v. Martin*, 117 Ohio St.3d 58, 2008-Ohio-292, 881 N.E.2d 850, ¶ 12; Am.Sub.H.B. No. 320, 145 Ohio Laws, Part III, 5403, 5403-5407. The Ohio Uniform Trade Secrets Act "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." R.C. 1333.67(A). However, there are three exceptions to that general rule of preemption. Contractual remedies and criminal remedies, "whether or not based on misappropriation of a trade secret," are not affected by the Act. R.C. 1333.67(B)(1) and (3). Additionally, "[o]ther civil remedies that are not based on misappropriation of a trade secret" are not affected by the Act. R.C. 1333.67(B)(2).

**{¶ 33}** In this case, we are presented with the question whether Hanneman Family's tort claims are preempted by the Act for being "[o]ther civil remedies," *id.* Therefore, to determine whether Hanneman Family's tort claims are preempted,

we must determine what it means for a civil remedy to be based on misappropriation of a trade secret. *See id.* To answer this question, we first look to the plain language of the Act.

**{¶ 34}** R.C. 1333.67 preempts "conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret," R.C. 1333.67(A), but it does not preempt "[o]ther civil remedies that are not based on misappropriation of a trade secret," R.C. 1333.67(B)(2). In other words, the Act preempts civil remedies that *are* based on misappropriation of a trade secret. "Misappropriation" under the Act generally requires either the acquisition, disclosure, or use of a trade secret. R.C. 1333.61(B). And a trade secret is a type of information that derives independent economic value, actual or potential, from not being generally known to and readily ascertainable by proper means and is subject to reasonable efforts to protect its secrecy. R.C. 1333.61(D). "Based on" is a phrasal verb, and the verb "base" means "[t]o use (something) as the thing from which something else is developed." *Black's Law Dictionary* 185 (11th Ed.2019) ("their company *is based* on an abiding respect for the employees" [emphasis added]). Therefore, civil remedies that are developed from trade-secrets-misappropriation allegations are not excepted from the Act's preemptive reach.

**{¶ 35}** Additionally, the Act instructs that its provisions "shall be applied and construed to effectuate [its] general purpose to make uniform the law with respect to [its] subject among states enacting [the Uniform Trade Secrets Act]." R.C. 1333.68. "The primary goal in statutory interpretation is to give effect to the intent of the legislature." *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 39, 741 N.E.2d 121 (2001). Thus, the legislature's mandate requires us to consider how our sister states have interpreted the Act.

**{¶ 36}** There are two schools of thought concerning the types of claims that are preempted by the Uniform Trade Secrets Act: (1) claims based on allegations of misappropriation of a trade secret or unauthorized use of information are

preempted or (2) claims based only on the actual misappropriation of a trade secret are preempted. *See Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, W.D.Ky. No. 3:16-cv-00024-RGJ-RSE, 2019 WL 1748539, *3 (Apr. 18, 2019) (collecting cases illustrating the split of authority concerning the reach of the Uniform Trade Secret Act's preemption provision).

{¶ 37} The majority view is that claims that are based on the unauthorized use of information, regardless of whether that information meets the definition of "trade secret," are preempted. Parker & Justice, *The Differing Approaches to Preemption Under the Uniform Trade Secrets Act*, 49 Tort Trial & Ins. Prac.L.J. 645, 648 (2014) (the majority view of preemption under the Uniform Trade Secrets Act is that common-law claims that seek to protect confidential information are preempted); *Hauck Mfg. Co. v. Astec Industries, Inc.*, 375 F.Supp.2d 649, 656 (E.D.Tenn.2004) ("courts unanimously agree that in order for [claims not based on the Uniform Trade Secrets Act] to survive they must rely on something more than *allegations of misappropriation of trade secrets*, but they appear to disagree as to what exactly that 'something more' must be" [emphasis added]); *see, e.g.*, *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, N.D.Ill. 94 C 6884, 1999 WL 529572, *3 (July 20, 1999) (the Uniform Trade Secrets Act eliminated common-law claims based on conduct that might support a trade-secrets action); *Mtge. Specialists, Inc. v. Davey*, 153 N.H. 764, 777, 904 A.2d 652 (2006) (state's version of the Uniform Trade Secrets Act preempted claims that are based on the unauthorized use of information). The rationale behind the majority view is that the purpose of the Uniform Trade Secrets Act is " 'to create a uniform business environment [with] more certain standards for protection of commercially valuable information,' " *Mtge. Specialists, Inc.* at 775-776, quoting *Auto Channel, Inc. v. Speedvision Network, L.L.C.,* 144 F.Supp.2d 784, 789 (W.D.Ky.2001), and " 'to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations

of misappropriation of information,' " *id.*, quoting *Burbank Grease Servs., L.L.C. v. Sokolowki*, 278 Wis.2d 698, 693 N.W.2d 89 (2005).

{¶ 38} The minority view on preemption under the Uniform Trade Secrets Act is that only claims concerning information that meets the definition of "trade secret" are preempted. *See, e.g.*, *Am. Biomedical Group, Inc. v. Techtrol, Inc.*, 2016 OK 55, 374 P.3d 820, ¶ 23. Courts taking the minority view rely primarily on the plain language of their state's enactment of the law and find that there can be a misappropriation of trade secrets only when there is actually a trade secret. *See, e.g.*, *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, 191 F.Supp.2d 652, 658-659 (E.D.Va.2002) (the plain meaning of the state statute demonstrates that unless the information is a trade secret, the court cannot dismiss alternative theories of relief as preempted).

{¶ 39} Courts that have applied the Ohio Uniform Trade Secrets Act have generally taken an approach consistent with the broader, majority view on preemption. *See, e.g.*, *Sal's Heating & Cooling, Inc. v. BERS Acquisition Co., L.L.C.*, 2022-Ohio-1756, 192 N.E.3d 537, ¶ 49 (8th Dist.); *Stolle Mach. Co., L.L.C. v. RAM Precision Industries*, 605 Fed.Appx. 473, 484 (6th Cir.2015); *Office Depot, Inc. v. Impact Office Prods., L.L.C.*, 821 F.Supp.2d 912, 918-920 (N.D.Ohio 2011); *Rogers Indus. Prods., Inc. v. HF Rubber Mach., Inc.*, 188 Ohio App.3d 570, 580-581, 936 N.E.2d 122 (9th Dist.2010). The United States Court of Appeals for the Sixth Circuit has determined that the Act "should be understood to preempt not only causes of action for misappropriation of trade secrets but also causes of action that are based in some way on misappropriation of trade secrets." *Stolle Mach. Co.* at 484.

{¶ 40} There are problems with both the majority and the minority approaches. If we were to adopt the majority view, we would expand the phrase "misappropriation of a trade secret," R.C. 1333.67, to include misappropriation of a *purported* trade secret. But if we were to adopt the minority view, we would be

out of step with the majority of other jurisdictions and would essentially render the Act meaningless—there would be no uniformity of the law, and common-law claims based on unauthorized use of information would remain viable. This would thwart the General Assembly's purpose in adopting the Act.

**{¶ 41}** In this situation, we should adopt the majority view that the Uniform Trade Secrets Act should be understood to preempt other causes of action for misappropriation of trade secrets and causes of actions that are based in some way on misappropriation of trade secrets. *See Stolle Mach. Co.* at 484. This is the only interpretation that gives effect to the legislative intent that the Act function uniformly with other states that have adopted the Uniform Trade Secrets Act, and this interpretation protects only the information that the General Assembly deemed appropriate to protect. If the General Assembly intended to protect other forms of information, then it could have done so, and it can certainly amend the Act to do so.

**{¶ 42}** The next question is how to determine whether a cause of action is based in some way on allegations of trade-secrets misappropriation. There are two schools of thought on how to make that determination: (1) compare the elements of the state-law claim to the elements of the Uniform Trade Secrets Act claim or (2) determine whether the state-law claim arises out of the same core of facts that would underlie a potential Uniform Trade Secrets Act claim. *See Stolle Mach. Co.*, 605 Fed.Appx. at 484. The majority opinion implicitly adopts the second view. I agree that the second view is the most appropriate. We should explicitly hold that the key inquiry in this regard is whether the tort claims contain the same operative facts that formed the basis of the misappropriation-of-trade-secrets claim. *See id.* at 485; *see also Robbins v. Supermarket Equip. Sales, L.L.C.*, 290 Ga. 462, 466-467, 722 S.E.2d 55 (2012). When the state-law claim has a factual basis independent from the facts establishing the Ohio Uniform Trade Secrets Act claim,

the claim supported by an independent factual basis survives preemption. *Stolle Mach. Co.* at 485.

{¶ 43} In this case, we look at Hanneman Family's amended complaint to determine whether the factual basis for its tort claims is independent from the factual basis for its misappropriation-of-trade-secrets claim. As recognized by the majority opinion, Hanneman Family's tort claims all hinge on the taking and use of the information in the preneed contracts and plainly arise from the same factual allegations as its misappropriation-of-trade-secrets claim. Therefore, Hanneman Family's tort claims are preempted by R.C. 1333.67, and it is irrelevant that the preneed contracts were not found to be a trade secret under the Ohio Uniform Trade Secrets Act.

{¶ 44} Because the tort claims are preempted, it is not necessary to resolve Hanneman Family's second proposition of law concerning damages.

### Conclusion

{¶ 45} This court should join the majority of other jurisdictions and hold that in Ohio, unauthorized-use-of-information claims that are not otherwise preserved under the Revised Code are preempted by the Ohio Uniform Trade Secrets Act. Further, I would hold that because Hanneman Family's tort claims were based solely on the unauthorized use of information found in its preneed contracts as alleged in its misappropriation-of-trade-secrets claim, its tort claims are preempted. Since the majority opinion correctly determines that Hanneman Family's misappropriation-of-trade-secrets claim is unsuccessful and reaches the right result on the preemption issue, I concur in part and in the judgment.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

––––––––––––––––

Balyeat, Leahy, Daley, Miller & Bensinger, L.L.C., Aaron L. Bensinger, and Christopher A. Jackson, for appellant and cross-appellee.

Cory, Meredith, Witter & Smith, L.P.A., J. Alan Smith, and Dalton J. Smith, for appellees and cross-appellants.

_____