**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Bohlen v. Anadarko E&P Onshore, L.L.C.,* **Slip Opinion No. 2017-Ohio-4025.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-4025

BOHLEN ET AL., APPELLANTS, *v.* ANADARKO E&P ONSHORE, L.L.C.;

ALLIANCE PETROLEUM CORPORATION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Bohlen v. Anadarko E&P Onshore, L.L.C.,* **Slip Opinion No. 2017-Ohio-4025.]**

*Oil and gas leases—Rights and remedies of the parties to an oil and gas lease are determined by the terms of the written document—Termination provision in delay-rental clause did not extend beyond primary term of lease.*

(No. 2015-0187—Submitted March 1, 2017—Decided June 1, 2017.)

APPEAL from the Court of Appeals for Washington County,

No. 14CA13, 2014-Ohio-5819.

_____

**FISCHER, J.**

{¶ 1} In this case, we are asked to determine a lessor's right to terminate an oil and gas lease when a lessee fails to make minimum annual-rental or royalty payments. We determine that the provision in the lease requiring the lessee to pay

a minimum annual rental of $5,500 does not invoke the termination provision in the unrelated delay-rental clause and that the lease is not void as against public policy. Accordingly, we affirm the judgment of the court of appeals reversing the trial court's summary judgment in favor of the lessors and remanding the cause to the trial court for further proceedings.

I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

{¶ 2} Plaintiffs-appellants, Ronald and Barbara Bohlen, own 12 parcels of real estate in Lawrence Township in Washington County, Ohio. The tracts total approximately 500 acres of land. In February 2006, the Bohlens entered into an oil and gas lease with defendant-appellee Alliance Petroleum Corporation ("Alliance"). The Bohlens granted Alliance the exclusive right to use their land for oil and gas exploration and operations, and in exchange, Alliance agreed to make "royalty" payments to the Bohlens based on Alliance's oil and gas production and proceeds.

{¶ 3} In terms of duration, the lease provides for "a term of One (1) years [sic] and so much longer thereafter as oil or gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the sole judgment of the Lessee, or as the premises shall be operated by the Lessee in the search for oil or gas." The lease also provides that Alliance must pay the Bohlens a "delay rental" of $5,500 each year "for the privilege of deferring the commencement of a well," otherwise the lease "become[s] null and void" and the rights of the parties under the lease terminate. Under the lease, a well is commenced "when drilling operations have commenced on leased premises."

{¶ 4} In addition, the lease contains an addendum that provides that if the royalty payments Alliance makes to the Bohlens are less than $5,500 in any calendar year, then Alliance must pay the Bohlens any shortfall between the royalty payments and the $5,500 "annual rental payment."

{¶ 5} Within a year after the lease was executed, Alliance drilled and completed two wells on two separate parcels on the Bohlens' property. Neither of the wells produced any oil. Well No. 1 produced gas in 2007, but it has not produced any since that time. Well No. 2 has produced gas since its inception in 2007.

{¶ 6} The Bohlens received annual payments from Alliance as follows: $5,500 in 2007, $4,284.83 in 2008, $4,172.47 in 2009, $4,757.22 in 2010, $5,448.51 in 2011, $5,141.84 in 2012, and $5,245.90 in 2013. Alliance assigned a partial interest in the lease to Anadarko E&P Onshore, L.L.C. ("Anadarko") in September 2011.

{¶ 7} In 2013, the Bohlens filed a declaratory-judgment action against Alliance and Anadarko, requesting an order declaring the lease forfeited. The parties filed cross-motions for summary judgment. In their motion for summary judgment, the Bohlens argued that the lease violates public policy and is void ab initio because it allows Alliance and Anadarko to encumber the property indefinitely by paying delay rentals. The Bohlens also argued that the lease terminated under its own terms because Alliance and Anadarko did not pay the minimum annual rental of $5,500 as required by the delay-rental clause. Finally, the Bohlens argued that the lease terminated under its own terms because of a failure of production.

{¶ 8} The trial court found in favor of the Bohlens and declared that (1) the lease is void ab initio as against public policy because it allows the lessees to indefinitely forestall production by paying a nominal annual delay rental, (2) the lease had terminated under its own terms because Alliance and/or Anadarko had failed to pay $5,500 annually, and (3) Alliance and Anadarko had violated the express and implied terms of the lease by failing to produce sufficient oil or gas from the wells. Thus, the trial court ordered forfeiture of the lease.

**{¶ 9}** Alliance and Anadarko appealed the trial court's judgment. The Fourth District Court of Appeals reversed the trial court's judgment. The appellate court determined that the trial court erred in holding that the lease is a no-term lease, because the lease contains a primary term during which drilling must commence. 2014-Ohio-5819, 26 N.E.3d 1176, ¶ 19 (4th Dist.), citing *Hupp v. Beck Energy Corp.*, 2014-Ohio-4255, 20 N.E.3d 732, ¶ 115 (7th Dist.). The appellate court determined that the trial court erred in holding that the lease allows Alliance and/or Anadarko to extend the lease in perpetuity by paying a delay-rental fee, because the delay-rental clause applies only during the primary term of the lease. *Id.* at ¶ 20. The appellate court also determined that the trial court erred in holding that the lease had terminated when Alliance failed to pay the annual minimum rental of $5,500 as required in the lease addendum. *Id.* at ¶ 26. According to the Fourth District, because Alliance began drilling its wells in 2007, within the one-year primary term, the termination provision never became effective and the requirement in the addendum that the lessee pay $5,500 a year did not revive the termination provision. *Id.* Finally, the appellate court determined that the trial court erred in holding that the lease had expired because of Alliance and/or Anadarko's failure to produce oil or gas in paying quantities or to reasonably develop the property. *Id.* at ¶ 35. In late 2014, appellee Artex Energy Group, L.L.C. ("Artex") became the successor in interest to Anadarko. The Bohlens filed a discretionary appeal in this court in February 2015, and we accepted their appeal on four propositions of law. 143 Ohio St.3d 1416, 2015-Ohio-2911, 34 N.E.3d 929.

## II. ANALYSIS

**{¶ 10}** This court conducts a de novo review of a summary-judgment ruling. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is granted when no genuine issues of material fact remain to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party,

reasonable minds can reach a conclusion only in favor of the moving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶ 11} The first proposition of law raised by the Bohlens relates to enforcement of oil and gas leases as contracts. The second and third relate to the application of delay-rental clauses, and the fourth relates to oil and gas leases that indefinitely forestall production, such that they are void as against public policy.

A. Enforcement of Oil and Gas Leases as Contracts

{¶ 12} We recently discussed the nature of oil and gas leases in *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 41-42. In *Buell*, we explained that "[t]here is general consensus among the states that an oil and gas lease creates a property interest, but there is disagreement about the nature of that property interest." *Id.* at ¶ 42, citing Keeling & Gillespie, *The First Marketable Product Doctrine: Just What Is the "Product"?*, 37 St. Mary's L.J. 1, 7 (2005).

{¶ 13} We have also long maintained that an oil and gas lease is a contract to which the law of contracts applies. *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897) ("The rights and remedies of the parties to an oil or gas lease, must be determined by the terms of the written instrument * * *. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties"); *see Brown v. Fowler*, 65 Ohio St. 507, 520, 63 N.E. 76 (1902).

{¶ 14} In this case, the parties have raised no arguments concerning the nature of the property interest created. Instead, the parties agree that this case requires interpretation of the lease under the principles of contract law.

{¶ 15} When determining the rights of parties under oil and gas leases, courts must apply a cardinal principle of contract law: the unambiguous language of the contract governs, and courts "will not give the contract a construction other than that which the plain language of the contract provides." *Aultman Hosp. Assn.*

*v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989), syllabus; *see Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, ¶ 9. Keeping in mind that this court's duty is to give effect to the words employed by the parties in a contract, we now turn to the provisions of the oil and gas lease at issue in this case.

## B. Delay-Rental Clauses

{¶ 16} Generally, a contemporary oil and gas lease sets forth the duration of the lease in a habendum clause that contains two tiers: a "primary term" and a "secondary term." *See Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 77; *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals*, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, ¶ 20. The primary term sets forth a period of definite duration, and the secondary term then sets forth a period of indefinite duration, permitting extension of the lease as long as certain conditions are met, typically, when oil and gas are produced in paying quantities. *Claugus Family Farm* at ¶ 20; *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 615 Pa. 199, 210, 42 A.3d 261 (2012). Oil and gas leases also typically contain a delay-rental clause, which allows a lessee to delay drilling a well during the primary term as long as the lessee compensates the lessors. *Claugus Family Farm* at ¶ 3, 25, citing *Brown*.

{¶ 17} Like a typical oil and gas lease, the lease between the Bohlens and Alliance contains a habendum clause, and it provides for a primary term of one year. The secondary term then sets forth a continuation of the lease for "so much longer thereafter as oil or gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the sole judgment of the Lessee, or as the premises shall be operated by the Lessee in the search for oil or gas." The lease also contains a delay-rental clause, which provides:

> This lease, however, shall become null and void and all rights of
> either party hereunder shall cease and terminate unless, unless [sic]

the Lessee shall thereafter pay a delay rental of $5,500.00 Dollars each year, payments to be made yearly, but in no event not less than yearly, for the privilege of deferring the commencement of a well. A well shall be deemed commenced when drilling operations have commenced on leased premises.

{¶ 18} The Bohlens argue that the court of appeals erred in holding that a delay-rental clause, as a matter of course, applies only to the primary term, because the language employed by the parties in this particular lease provides otherwise. The addendum to the lease provides that Alliance must pay the Bohlens at least $5,500 as an "annual rental." According to the Bohlens, the $5,500 annual-rental payment as provided for in the addendum must be read in conjunction with the delay-rental clause, which also refers to a $5,500 rental. When those two provisions are read together, the Bohlens contend, the lessees must pay the Bohlens at least $5,500 per year throughout the life of the lease, otherwise the lease terminates as provided in the delay-rental clause.

{¶ 19} Alliance and Artex contend that the appellate court correctly applied the unambiguous language of the lease to the facts of this case. Under the lease, a well is commenced "when drilling operations have commenced on leased premises." Because Alliance drilled at least one well on the leased property within the one-year primary term of the lease, Alliance did not "defer[] the commencement of a well" outside of that primary term.

{¶ 20} To support their argument that the termination provision in the delay-rental clause should be extended beyond the primary term, the Bohlens rely on *Price v. K.A. Brown Oil & Gas, L.L.C.*, 7th Dist. Monroe No. 13 MO 13, 2014-Ohio-2298, and *Clay v. K. Petroleum, Inc.*, E.D. Ky. No. 07-113-REW, 2008 U.S. Dist. LEXIS 42972 (June 2, 2008). In *Price*, lessors/property owners whose property was encumbered by an oil and gas lease filed a declaratory-judgment

action, seeking to terminate the lease. *Price* at ¶ 9. Previous owners of the subject property had entered into an oil and gas lease in 1979, and two wells were drilled on the property, but those wells never produced any oil or gas. *Id.* at ¶ 3. The previous owners then entered into another lease in 1988 for the same property. The purpose of the 1988 lease was to put the existing wells into production—the first well within six months and the second well within the following six months. *Id.* at ¶ 5. If the lessee failed to adhere to this production schedule, then the lessee had to release the lease or pay shut-in royalties. *Id.* The 1988 lease also had a habendum clause that set forth a six-month primary term and a secondary term that continued the lease " 'as long thereafter as said premises are operated by lessee in the search for or production of oil or gas in paying quantities or as long as this lease is extended by any other provision hereof.' " *Id.* at ¶ 4. The first well was put into production in 1988, but the second well was not put into production until 1995, and no shut-in royalties were paid. *Id.* at ¶ 5.

{¶ 21} That trial court granted summary judgment in favor of the property owners and terminated the oil and gas lease, and the oil and gas company appealed. *Id.* at ¶ 1. The oil and gas company argued that the trial court erred in terminating the 1988 lease, because the habendum clause did not require the company to put both wells into production within the six-month primary term. *Id.* at ¶ 22. In affirming the trial court's judgment, the appellate court determined that the habendum clause was irrelevant to the appeal and that a separate provision in the lease required both wells to be put into production within a year. *Id.* The record evidence showed that the second well had not been put into production within a year and that no shut-in royalties had been paid, and thus, the court determined that it was "clear the lease was at an end unless there [was] some other lease provision or legal theory that would prevent termination." *Id.*

{¶ 22} *Price* is obviously distinguishable from the instant case. In *Price*, the parties had included a provision requiring that two existing wells be put into

8

production within a year, otherwise the lease terminated. One of the wells had not been put into production within a year, and thus, the lease terminated. In this case, the lease does not contain a similar termination provision apart from the delay-rental clause, and this case does not deal with a lease of property with preexisting wells.

{¶ 23} The Bohlens' reliance on *Clay* is similarly misplaced. In *Clay*, an oil and gas lease covered over 1,000 acres in Clay County, Kentucky, and it provided that the lessee had to pay an annual minimum royalty of $3,000, otherwise the lease would terminate " 'as to all but each producing well and 40 acres around it.' " 2008 U.S. Dist. LEXIS 42972, at *1-3. The lessors/property owners filed an action to terminate the lease, and the lessee admitted in discovery that the annual minimum royalty had not been paid. *Id.* at *17. The court rejected the lessee's defenses and terminated the lease consistent with the language of the lease. *Id.* at *25.

{¶ 24} The lease in this case differs significantly from the lease at issue in *Clay*. The lease in *Clay* contained a termination provision within the annual-minimum-royalty clause. Here, the Bohlens seek to join two separate and distinct clauses of the lease together—the delay-rental clause, which contains a termination provision, and the annual-rental-payment clause in the lease addendum, which does not contain a termination provision. Because the lease in *Clay* stated explicitly that a failure to pay the minimum royalty would result in termination, it is distinguishable.

{¶ 25} In further support of the their contention that the termination provision in the delay-rental clause applies when the lessee fails to make annual rental payments as provided in the lease addendum, the Bohlens point out that the leased property covers noncontiguous acreage. They argue that this shows that the parties intended to create multiple primary terms in order to obtain maximum production from all the available tracts. To support this argument, the Bohlens rely

on a federal district court decision, *Beaverkettle Farms, Ltd. v. Chesapeake Appalachia, L.L.C.*, N.D.Ohio No. 4:11CV02631, 2013 U.S. Dist. LEXIS 124509, *35-36 (Aug. 30, 2013).

{¶ 26} In *Beaverkettle*, the lessor/property owner filed a declaratory-judgment action seeking to terminate an oil and gas lease and prevent the lessee from conducting hydraulic fracturing on its property. *Id.* at *1-3. The property owner argued, in part, that the lease had terminated because the lessee had not paid delay rentals. *Id.* at *6. The habendum clause in the lease provided:

> "This lease, however, shall become null and void and all rights of either party hereunder shall cease and terminate unless within 12 months from the date hereof, Lessee commences the drilling of a well on the premises for production of oil and gas or unless Lessee shall pay a delay rental of Ten dollars ($10.00) per acre each year commencing on the date of this lease * * *. Said delay rental shall not be due and payable for each acre which is contained within an approved drilling plat, provided that once Lessee commences drilling, Lessee proceeds with due diligence to complete such well, and once completed, such well continues to produce and sell oil and gas in paying quantities. * * *
>
> The payment for the first quarter shall be made not later than the date of this Lease. Once a well is drilled on the Lease, said Lease shall be held by production and Lessee shall be entitled to maintain all undrilled acreage under this Lease by paying delay rentals as provided above."

(Emphasis by *Beaverkettle* court deleted.) *Id.* at *35-36.

10

**{¶ 27}** The property owner in *Beaverkettle* argued that the lessee's failure to pay delay rentals after the expiration of the primary term caused the lease to become null and void as to the undrilled acreage. *Id.* at \*35. The lessee argued that under established oil and gas law, delay rentals apply only during the primary term. *Id.* at \*37. Although the *Beaverkettle* court determined that nothing in the lease explicitly limited the payment of delay rentals to the primary term, the court ultimately concluded that the meaning of "delay rental" and whether the lessee must pay delay-rental payments during the secondary term should be resolved at trial. *Id.* at \*41, 51.

**{¶ 28}** Given that the *Beaverkettle* court determined that a factual issue existed for trial as to the meaning of "delay rental," the case is inapplicable. Moreover, the habendum and delay-rental clauses at issue in *Beaverkettle* differ significantly from those clauses in the lease at issue here. The lease in the case at bar does not mention undrilled acreage or parcels.

**{¶ 29}** The Bohlens also argue that the parties' intent to maximize production of the noncontiguous acreage is evidenced by crossed-out language in paragraph 13 of the lease form, which deals with the lessee's assignment and transfer of the lease. Paragraph 13 of the lease form contained a provision, which the parties to this lease struck through with a horizontal line, that stated, "Failure of payment of rental or royalty on any part of this lease shall not void or have any effect on this lease as to any other part." According to the Bohlens, the language crossed out of paragraph 13 shows the parties' intent that a failure to pay the annual rental would terminate the lease.

**{¶ 30}** The deletion of the sentence in paragraph 13 relating to assignment is irrelevant to the unambiguous language of the stand-alone delay-rental clause. Under the plain language of the lease, the lessee must pay a delay rental for deferring commencement of a well. But Alliance did not defer commencement of a well beyond the primary-term of the lease, because at least one well was drilled

within the first year. Therefore, the lease did not terminate under the delay-rental clause.

**{¶ 31}** Finally, the Bohlens assert that after the Fourth District Court of Appeals released its decision in this case, it issued a contrary decision in *Sims v. Anderson*, 2015-Ohio-2727, 38 N.E.3d 1123 (4th Dist.). In *Sims*, the court considered whether an oil and gas lease terminated after the lessee failed to make minimum royalty payments. *Id.* at ¶ 1. The lease contained a primary term of six months and provided that if a well had not been completed by July 1, 1977, then the lease terminated. *Id.* at ¶ 3. The lease then provided that the lease terminated on July 1, 1977, "unless the Lessee is then producing oil or gas or their constituents in paying quantities." *Id.* The lease defined "paying quantities" as "production sufficient to net the Lessors a minimum of $400 royalty per year for oil or gas marketed." *Id.* The plaintiffs sought a judgment declaring that the lease had terminated when the lessee failed to make a $400 minimum-royalty payment in 2012. *Id.* at ¶ 5. In reversing the trial court's judgment in favor of the lessee, the appellate court determined that the trial court had erred in relying on equitable considerations, because the lease terminated under the express forfeiture provision when the lessee did not make the required $400 payment. *Id.* at ¶ 16.

**{¶ 32}** The Fourth District's decision in *Sims* is not contrary to its decision in this case. In *Sims*, the court gave effect to the parties' intent as provided in the express forfeiture provision in the habendum clause. But no similar forfeiture provision exists in the habendum clause in this case. Thus, the Fourth District's application of the plain language of the lease in this case is consistent with *Sims*.

**{¶ 33}** Therefore, we conclude that the underpayment by the lessees of the minimum annual rental, as provided in the lease addendum, does not entitle the Bohlens to a forfeiture of the lease under the unrelated delay-rental clause.

C. Indefinite Forestalling of Production as Against Public Policy

**{¶ 34}** In the discussion of their final proposition of law, the Bohlens assert that the court of appeals erred in determining that the lease did not violate public policy. The Bohlens argue that the lease allows Alliance and Artex to indefinitely forestall drilling and development on the undrilled acreage by paying the $5,500 minimum annual rental. The trial court agreed and found that the lease at issue is a no-term, perpetual lease, which violates public policy under *Ionno v. Glen-Gery Corp.*, 2 Ohio St.3d 131, 443 N.E.2d 504 (1983).

**{¶ 35}** In *Ionno*, lessors/property owners sought forfeiture of a mining lease, contending that the mining corporation had breached its implied duty to reasonably develop the land. *Id.* at 132. That lease did not contain a time period in which mining operations were required to commence, and the mining corporation argued that its payment of an annual minimum rent or royalty relieved it of any obligation to reasonably develop the land. *Id*. at 132-133. It asserted that as long as timely payments were made, the mining corporation could forestall production. *Id.* at 133. After determining that an implied covenant existed in the mining lease that the corporation would work the land with ordinary diligence, the *Ionno* court held that the minimum rent or royalty payments were not "a substitute for timely development." *Id.* at 134. The court went on to opine that

> [t]o hold otherwise would be to reward mere speculation without development, effort, or expenditure on the part of the lessees. It would allow a lessee to encumber a lessor's property in perpetuity merely by paying an annual sum. Such long-term leases under which there is no development impede the mining of mineral lands and are thus against public policy.

*Id*.

**{¶ 36}** This court recently distinguished *Ionno* in *Claugus Family Farm*, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836. In *Claugus Family Farm*, the lessors/property owners challenged a ruling from the Seventh Appellate District, *Hupp*, 2014-Ohio-4255, 20 N.E.3d 732. The property owners' leases with an energy company contained a habendum clause that set forth a primary term of ten years and a secondary term that continued the lease " 'so much longer thereafter as oil and gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee, or as the premises shall be operated by the Lessee in the search for oil or gas.' " *Id.* at ¶ 23. The property owners argued that the form that the energy company used to create the oil and gas leases did not require development to begin during the primary term and thus the leases were perpetual, just as in *Ionno*, and were void as against public policy. *Claugus Family Farm* at ¶ 24.

**{¶ 37}** The *Claugus Family Farm* court distinguished the *Ionno* lease from the lease at issue in that case. The *Ionno* lease did not contain a time in which operations had to begin and allowed the mining company to pay royalties for years without developing the land, whereas the oil and gas leases at issue in *Claugus Family Farm* permitted delay rentals only during the primary lease term of ten years if no well was commenced. *Id.* at ¶ 22, 25-29. The court also determined that the language used in the secondary term of the habendum clause did not permit extension of delay-rental payments into the secondary term, nor did the language permit indefinite continuation of the leases at the lessee's discretion without the development of oil and gas. *Id.* at ¶ 27-28.

**{¶ 38}** The lease at issue in this case contains a similar habendum clause to the lease at issue in *Claugus Family Farm*. Just as this court held in *Claugus Family Farm*, the lease at issue in this case is not a no-term, perpetual lease. The Bohlens attempt to distinguish *Claugus Family Farm* by arguing that the lease in that case had a ten-year primary term in which drilling could be postponed, and here,

14

according to the Bohlens, the lease and addendum allow Alliance and Artex to postpone drilling on the undrilled acreage indefinitely by paying the $5,500 minimum annual rental. As we have determined, the Bohlens' interpretation of the lease and its addendum goes against the plain language of the lease. The addendum language does not modify the delay-rental clause. Therefore, under *Claugus Family Farm*, the lease is not a no-term, perpetual lease, and thus, the court of appeals correctly determined that the trial court erred in concluding that the lease is void as against public policy.

## III. CONCLUSION

{¶ 39} The plain language of the parties' oil and gas lease requires the lessee to pay a delay rental for deferring commencement of a well, otherwise the lease terminates; however, the lessee did not defer commencement of a well beyond the primary term of the lease, because at least one well was drilled within the first year. Therefore, the lease did not terminate under the delay-rental clause. The requirement in the addendum that the lessees pay $5,500 as a minimum annual rental did not invoke the termination provision in the delay-rental clause. Whether Alliance and/or Artex must compensate the Bohlens for underpayment per the addendum is not an issue before this court. Moreover, the lease in this case does not qualify as a no-term, perpetual lease for the same reasons that the lease at issue in *Claugus Family Farm* did not qualify as a perpetual lease. Therefore, the Bohlens are not entitled to summary judgment. The judgment of the Fourth District is affirmed, and the cause is remanded to the trial court for further proceedings.

Judgment affirmed
and cause remanded.

O'CONNOR, C.J., and O'DONNELL, FRENCH, O'NEILL, and DEWINE, JJ., concur.

KENNEDY, J., concurs in judgment only.

_____

Fields, Dehmlow & Vessels, L.L.C., and Ethan Vessels, for appellants.

Hanlon, Estadt, McCormick & Schramm Co., L.P.A., and Erik A. Schramm, for appellee Alliance Petroleum Corporation.

Kegler, Brown, Hill & Ritter Co., L.P.A., and John P. Brody, for appellee Artex Energy Group, L.L.C., successor in interest to Anadarko E&P Onshore, L.L.C.

Vorys, Sater, Seymour & Pease, L.L.P., Timothy B. McGranor, and Gregory D. Russell, urging affirmance for amicus curiae, Ohio Oil and Gas Association.

_____