[Cite as *SJBK, L.L.C. v. Northwood Energy Corp.*, 2023-Ohio-4729.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

SJBK, LLC,

Plaintiff-Appellant,

v.

NORTHWOOD ENERGY CORPORATION, et al.,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MO 0010**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2020-291

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Timothy B. Pettorini*, *Atty. Michelle F. Noureddine, Atty. Jeremy D. Martin*, for Plaintiff-Appellant and

*Atty. Matthew D. Fazekas*, *Atty. Timothy B. McGrano*, Vorys, Sater, Seymour and Pease LLP, for Defendant-Appellee Equinor USA Onshore Properties Inc. .

Dated:  December 22, 2023

**Robb, J.**

{¶1} The landowner, Plaintiff-Appellant SJBK LLC, appeals the decision of the Monroe County Common Pleas Court granting summary judgment in favor of Defendant-Appellee Equinor USA Onshore Properties Inc. Appellant argues Appellee breached the oil and gas lease by failing to include the entirety of Appellant's leased acreage in the pooled unit (upon which production was occurring). Appellant contends this failure did not merely entitle them to the release of the unpooled acreage as claimed by Appellee. Instead, it is argued Appellee's failure to pool less than all acreage without consent entitled Appellant to recover damages for their ownership of unpooled acreage and/or caused forfeiture of the entire lease, thereby rendering Appellee's production from the pooled acreage a trespass. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On August 2, 2012, Shane and Jamison Talkington entered an oil and gas lease for their 79.774 acres of property in Monroe County with Northwood Energy Corporation. (Vol. 226, Pg. 702). The Talkingtons transferred the lease to a company they owned, Appellant, SJBK, LLC. Northwood Energy transferred the production rights pertinent to this action to Appellee, Equinor USA Onshore Properties Inc. (fka Statoil USA Onshore Properties Inc.).

{¶3} Within the five-year primary term, Appellee pooled 65.832 acres with outside property and drilled a well. Production commenced, resulting in the payment of royalties for the produced acreage. Appellee intended to pool the other 13.942 acres into a different unit but was unable to do so, as an adjacent property was subject to a federal lease owned by the Bureau of Land Management. By letter in September 2017, Appellee notified Appellant the lease terms called for expiration of the lease *over the non-unitized lands* two years after the expiration of the primary term since less than all acreage was in the pooled unit.

{¶4} On July 2, 2020, Appellant filed a complaint against Appellee. Other companies were initially named but then voluntarily dismissed from the suit. The

complaint requested a declaratory judgment stating Appellee breached the lease by failing to obtain written consent to pool less than the total acreage and by failing to pool the omitted acreage by the end of any two-year extension applicable under the pooling clause.  Appellant also sought a declaration that this theory resulted in forfeiture of the *entire* lease and raised a claim that the continued production from the *pooled* acreage constituted trespass after lease forfeiture.

{¶5}    Appellee moved for summary judgment on all Appellant's claims.  On the threshold issue, the motion argued there was no breach because the various clauses in the lease anticipated pooling and provided for a release of only the unpooled non-producing acreage.  After arguing this threshold issue relied upon by Appellant would also dispose of the lease termination claim and thus the trespass claim, Appellee alternatively argued that even the court believed there was an actionable breach with recovery. Besides partial release (release of unpooled acreage) called for in the Pugh clause, this theory could only entitle Appellant to damages to the unpooled acreage and not full lease termination (so as to result in trespass to the pooled acreage).

{¶6}    Appellant filed a cross-motion for partial summary judgment (on liability regarding the threshold issue).  Relying on the first sentence in ¶ 17 of the lease addendum, it was argued that although pooling is permitted without consent, this sentence restricts what constitutes pooling by providing:  "the entirety of the leased premises shall be include[d] in any pooled unit formed, unless Lessee received the prior written consent of the Lessor."

{¶7}    On February 15, 2023, the trial court granted summary judgment for Appellee on all claims.  Stating it was harmonizing the first sentence in ¶ 17 with other terms in the lease, the court observed the express consequence of a failure to pool all property was an expiration or release of the *unpooled* acreage under the Pugh Clause, which was also located in ¶ 17 and which was consistent with ¶ 11 and ¶ 12 of the lease. The trial court opined the latter three clauses would be rendered meaningless if the whole lease terminated for the failure to pool all acreage.

{¶8}    As the lease contemplated and contained the consequence of the failure (partial release of unpooled acreage), the trial court found Appellee did not commit an actionable breach of the lease by failing to pool a portion of the acreage and Appellant

was therefore not entitled to full lease termination. The court concluded the lease remained in full force and effect as to the pooled acreage on which there were operations and thus Appellee was not trespassing by continuing to extract from the pooled acreage that was held in the secondary term of the lease. Appellant filed a timely notice of appeal.

THE LEASE

**{¶9}** The habendum clause at ¶ 3 sets a primary term of five years with a secondary term continuing "as long thereafter as any Leased Minerals are produced, or considered produced under the terms of this Lease, in paying quantities from the Premises or land(s) unitized therewith * * * or this lease is maintained under any other provision hereof."

**{¶10}** The lease has a surrender clause at ¶ 11, which states: "Lessee, its successor or assign, may surrender this Lease or any part hereof at any time and from time to time." This clause also states, "Upon providing notice to Lessor of any such surrender, the rights and obligations of the parties hereunder, shall terminate as to the part so surrendered * * * Upon request by Lessor, Lessee shall execute a recordable instrument memorializing any surrender."

**{¶11}** The lease at ¶ 12 thereafter contains the following provision: "If this Lease is forfeited, terminated or canceled for any cause, it shall, nevertheless remain in full force and effect as to * * * any part of said land included in a pooled unit on which there are Operations." The initial pooling and unitization clause of the lease provides:

> Lessee is granted the right at any time to pool and unitize the Premises or any portion thereof, as to any or all strata or stratum, with any other lands for the prosecution of Leased Minerals. Operations upon and production from the unit shall be treated as if such Operations were upon or such production were from the leased premises whether or not the well or wells are located thereon, provided, however that Lessor shall receive, in lieu of other royalties, only such proportion of the royalties as the amount of Lessor's acreage placed in the unit in relation to the total acreage in the unit. Lessee shall have the right to form separate units in separate strata, to establish, alter, amend, revised, or eliminate any or all units from time to

time, and to determine the proper size and shape of each unit, all in Lessee's sole discretion.

Lease at ¶ 5.

{¶12} However, an addendum to the lease begins by stating, "The terms contained in this addendum supplement and control the terms and provisions contained in the printed lease form to which this addendum is attached, anything to the contrary in the printed form notwithstanding." Most pertinently, ¶ 17 of the addendum provides:

> Pooling/Unitization. *Lessee agrees that the entirety of the leased premises shall be include[d] in any pooled unit formed, unless Lessee receives the prior written consent of the Lessor.* Without written approval of Lessee, no pooled unit shall exceed 800 acres unless a larger unit is necessary to conform to any well spacing or density pattern that may be prescribed by any governmental authority having jurisdiction to do so. *Any drilling or reworking on or production from a well located on a pooled unit shall continue this Lease in full force and effect as to that part of the premises contained within a pooled unit. If the entirety of the leased premises is not included in a single unit, [the] leasehold on any portion of the leased premises not contained in a pooled unit can only be maintained for a period of two years after the expiration of the primary term unless it is included in one or more pooled unit(s) or otherwise maintained under the terms of this lease.*

(Emphasis added.) Lease Addendum at ¶ 17. The addendum also deleted certain lease provisions, such as an extended five-year primary term, storage rights, and various surface rights; it also "removed in its entirety" ¶ 13 (which disclaimed implied warranties) and ¶ 14 (which contained a right of first refusal).

## LAW

{¶13} Pursuant to Civ.R. 56(C), a party is entitled to summary judgment if: no genuine issue of material fact remains to be litigated; the movant is entitled to judgment as a matter of law; and reasonable minds can only conclude in the movant's favor after viewing the evidence in the light most favorable to the nonmovant. *Id.* We review a summary judgment decision de novo. *Bohlen v. Anadarko E & P Onshore, L.L.C.*, 150

Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, ¶ 10. We also review matters of law in a declaratory judgment action de novo. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13-16. Moreover, "[t]he construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus.

{¶14} In evaluating an oil and gas lease, the plain or unambiguous language of the contract governs. *Bohlen*, 150 Ohio St.3d 197 at ¶ 15. "[A] court's duty is to give effect to the words employed by the parties in a contract." *Id.* "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. * * * However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984).

{¶15} The ordinary meaning of common words is to be used unless a manifest absurdity would result or the face or overall contents of the instrument clearly evidence another meaning. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992) (to determine whether contract terms are ambiguous). "[A] contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. * * * If it is reasonable to do so, we must give effect to each provision of the contract." *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16, citing, e.g., *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997) (if one construction would make a doubtful condition meaningless, then the meaningful construction prevails). Therefore, "every word in a contract should be given meaning; no word should be construed as surplusage." *Summitcrest, Inc. v. Eric Petroleum Corp.*, 2016-Ohio-888, 60 N.E.3d 807, ¶ 37 (7th Dist.), citing *Cincinnati v. Gas Light & Coke Co.*, 53 Ohio St. 278, 285, 41 N.E. 239 (1895) ("enforce the contract according to its evident meaning, giving force to every word").

{¶16} Nevertheless, an introductory clause to an addendum stating it controls over clauses in the lease "does not destroy the fact that all lease provisions, where not clearly in conflict, should still be read in harmony with one another." *Id.* at ¶ 40. Even when a

contract is unambiguous, a court's construction, when possible, should attempt to harmonize all provisions rather than reading them so as to produce conflict. *Id.* at ¶ 35.

**{¶17}** In *Summitcrest*, the trial court found the lease contained two contradicting available trigger dates for a certain Pugh clause: (1) at the expiration of the primary term and any extension and at any time production ceases (as set forth in the first sentence); or (2) at any time between completion/abandonment of a well and commencement of drilling on an additional well (as set forth in the fourth sentence), which would include during the primary term. *Id.* at ¶ 25. This court reversed, observing the trial court created an internal inconsistency by failing to apply the "topical sentence" of the paragraph to the fourth sentence in the paragraph, which must be read as part of the overall scheme of the Pugh clause. *Id.* at ¶ 35-37, 41. "More importantly, [we found] the trial court's interpretation renders the habendum clause of the lease meaningless." *Id.* at ¶ 38 (pointing out under the habendum clause, the lessee had no production requirements in the primary term and the lease would thereafter continue with production in paying quantities).

**{¶18}** A habendum clause of an oil and gas lease sets forth the duration of the lease with two tiers, a definite primary term and an indefinite secondary term. *Bohlen*, 150 Ohio St.3d 197 at ¶ 16. If the conditions for the secondary term are not met (typically production in paying quantities), then the lease will automatically terminate under the express terms of the contract and the estate will revest in the lessor by operation of law. *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 77. Production from the property generally maintains the entire lease (unless a case was made for breach of an implied covenant in certain cases). *See Summitcrest*, 2016-Ohio-888 at ¶ 37 (noting leased lands are normally considered indivisible).

**{¶19}** In general, a Pugh clause will sever a lease where less than the entirety of the leased acreage is contained in a pooled unit. A "Pugh clause" is meant to protect a mineral rights lessor from the situation where a large tract of land is held under the lease by production on a very small portion of the land. *Id.* at ¶ 30. While maintaining the lease as to the acreage actually producing, the Pugh clause will sever non-producing acreage for release from the lease. *Id.* Here, it is agreed a Pugh clause is contained within ¶ 17 of the lease addendum (at least within sentences 3 and 4).

{¶20} Appellant cites a case where the Fifth District found the lessee's unitization without the lessor's written agreement was a breach of the 1949 lease wherein the lessor crossed out the unitization clause and handwrote that unitization could only occur by written consent. *American Energy-Utica, LLC v. Fuller*, 5th Dist. Guernsey No. 17 CA 000028, 2018-Ohio-3250, ¶ 7, 35, 37. As Appellee points out, the decision was made in the context of forced pooling performed under post-lease statutory enactments and addressed the constitutional right against impairment of contracts. *Id.* at ¶ 15, 18, 38-40, citing *Burtner-Morgan-Stephens Co. v. Wilson*, 63 Ohio St.3d 257, 586 N.E.2d 1062 (1992), syllabus (holding a statute within Chapter 1509 on royalties could not be retroactively applied to a pre-existing oil and gas lease). Moreover, the *American Energy-Utica* case was remanded by the Fifth District to the trial court without stating the remedy. Forfeiture was not imposed. We also note the *American Energy-Utica* addendum prohibited *all* unitization without written consent, whereas the lease in our case allowed pooling but the addendum said all property must be included in any unit absent written consent.

{¶21} In the Supreme Court's *Bohlen* case, a lease with a one-year primary term allowed the lessee to pay a delay rental ($5,500) for deferred well commencement in order to avoid lease termination. Because at least one well was drilled within the first year, the Court found commencement of a well was not deferred and the lease did not terminate under the delay-rental clause. *Bohlen*, 150 Ohio St.3d 197 at ¶ 19, 30. An addendum to the lease required the lessee to pay a minimum "annual rental" of $5,500, but the lessee paid royalties of less than $5,500 after the first year. *Id.* at ¶ 6. The lessor asked the Court to read the $5,500 delay-rental clause in the lease in conjunction with the $5,500 annual-rental payment in the addendum to find forfeiture occurred by the breach of the addendum. However, the Court held a failure under this clause did not invoke the termination provision in the delay-rental clause. *Id.* at ¶ 18, 33, 36.

{¶22} "Under Ohio law, forfeitures are abhorred." *Belmont Hills Country Club v. Beck Energy Corp.*, 7th Dist. Belmont No. 13 BE 18, 2015-Ohio-1322, ¶ 46. *See also State ex rel. Falke v. Montgomery Cty. Resid. Dev., Inc.*, 40 Ohio St.3d 71, 73, 531 N.E.2d 688 (1988). "Where certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. Under such a lease, the remedy for a breach of an implied

covenant, without more, is damages, and not forfeiture of the lease, in whole or in part." *Beer v. Griffith*, 61 Ohio St.2d 119, 121-122, 399 N.E.2d 1227 (1980) (even in cases where a breach of an implied covenant to reasonably develop is alleged and actionable, forfeiture can only be utilized if the legal damages are inadequate).

<u>ASSIGNMENT OF ERROR</u>

**{¶23}** Appellant's sole assignment of error provides:

"THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT TO DEFENDANT-APPELLEE AND DENIED PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT."

**{¶24}** Appellant describes ¶ 17 as containing something more than the "run-of-the-mill Pugh clause." Pointing out it is undisputed Appellee failed to obtain written consent to include less than the entire leased acreage into the pooled unit, Appellant argues this breached the express requirement in the first sentence of ¶ 17, which Appellant says was a "topical" sentence rendered superfluous by the trial court's error. It is urged that rather than harmonizing the first sentence of ¶ 17 with the other terms, the trial court read ¶ 11, ¶ 12, and/or ¶ 17's third and fourth sentence in isolation. To the contrary, Appellee says it is Appellant's construction of the lease that reads one term (the first sentence of ¶ 17) in isolation and then infers a forfeiture was intended.

**{¶25}** Appellant urges the recognition that the first sentence of ¶ 17 supersedes and controls over other provisions would harmonize its conflict with other lease clauses at issue (the other sentences in ¶ 17, the surrender provision in ¶ 11, or the full force provision in ¶12). Appellant says the Pugh clause is conditioned upon and not triggered until the lessee obtains the lessor's written consent to pool less than all acreage. In other words, pooling less than all acreage with written consent would trigger the Pugh clause so that any portion not drilled or put in a producing unit within two years of the end of the primary term would be released (with no effect on the other acreage), but pooling less than all acreage without prior written consent is an actionable breach (and results in termination of the entire lease rather than activation of the Pugh clause's release of unpooled acreage only). To the contrary, Appellee suggests the Pugh clause was triggered by the pooling of less than all acreage by the time the primary term ended plus two years.

<u>Case No. 23 MO 0010</u>

{¶26} In addition to the first claim for a declaration on breach, Appellant's second claim for declaratory judgment alleged the pooling of less than all acreage without consent was a material breach with an express remedy of lease termination in the entirety. Citing factors for evaluating whether a failure to render performance discharges the other party from their contractual obligations, Appellant urges the pooling of all acreage was an essential term of high significance and Appellee deprived the property owner of the benefit of full utilization resulting in less royalties (because the released unpooled acreage is now stranded while the pooled acreage is being produced). *See Kersh v. Montgomery Dev. Ctr.*, 35 Ohio App.3d 61, 65, 519 N.E.2d 665 (10th Dist.1987) (listing factors to determine if a plaintiff's breach precluded suit for a defendant's breach). Appellant concludes the failure to pool all property without consent resulted in forfeiture through automatic termination of the entire lease. It is reasoned that the lease only survives in the secondary term if minerals are produced from all property, and this condition was not met when production was from less than all acreage by the end of the primary term (unless written consent was obtained).

{¶27} From this, Appellant concludes the continued production from the pooled acreage after the end of the primary term constituted trespass. Citing a case from this district pending in the Ohio Supreme Court, they claim the production is a bad faith trespass subject to summary judgment because Appellee purposely continued production despite an unambiguous lease term requiring written consent or production from all acreage. *See Tera, LLC v. Rice Drilling D, LLC*, 2023-Ohio-273, 205 N.E.3d 1168, ¶ 57 (7th Dist.)(stating good faith for trespass was an issue of fact but finding the lease susceptible to only one reasonable interpretation due to the legal conclusion that the contested lease term was unambiguous), appeal allowed, 170 Ohio St.3d 1441, 2023-Ohio-1830, 210 N.E.3d 545.

{¶28} Appellee counters that even assuming arguendo the situation constituted an actionable breach with remedies outside of the Pugh clause's release of unpooled acreage, the lease does not provide the remedy of lease termination for all acreage and failing to pool less than 14 acres out of almost 80 acres was not so substantial as to release Appellant from all obligations under the lease. Appellee points out the trial court

Case No. 23 MO 0010

did not address these theories or the trespass topic because Appellee was granted summary judgment on the threshold issue of lease interpretation.

**{¶29}** As to the threshold argument, Appellee insists there was no breach because the lease expressly contemplated the situation of pooling less than the entire property and specifically provided this situation would maintain the producing pooled acreage with the mere release of the unpooled acreage. Appellee points out the addendum removed certain paragraphs in their entirety (¶ 13 and 14) but did not purport to remove ¶ 11 or 12, which paragraphs were consistent with the final two sentences in ¶ 17.

**{¶30}** To recap, the lease at ¶ 11 gives Appellee the right to surrender any part of the lease from time to time, specifying this would terminate the lease as to the parts surrendered. Then, ¶ 12 of the lease declares: "If this Lease is forfeited, terminated, or canceled for any cause, it shall, nevertheless remain in full force and effect as to * * * any part of said land included in a pooled unit on which there are Operations."

**{¶31}** The lease at ¶ 5 said Appellee had the right to pool and unitize any portion of the premises with other land and production from the unit holds the entire lease even though royalties would only be paid from the proportion of land in the pool. This paragraph also said Appellee had sole discretion to establish pooled units. The addendum at sentence one of ¶ 17 states, "the entirety of the lease premises shall be include[d] in any pooled unit formed, unless Lessee receives the prior written consent of the Lessor." This paragraph also sets forth the following provisions: any drilling, reworking, or production from the pooled unit continues the lease in full force and effect as to that part of the leased premises in the unit, and if all property is not in a single unit, then the property outside the unit can only be maintained for two years past the primary term unless it is included in one or more pooled units or otherwise maintained under the lease terms.

**{¶32}** We agree with the reasoning of the trial court in harmonizing the various contractual provisions at issue. Sentence 1 of ¶ 17 (which says all the leased land shall be in any pooled unit unless the lessor provides prior written consent) is not a condition precedent to subsequent sentences stating any drilling or production from a pool maintains the lease over the leased property that is in the pool and stating the lease continues for two years after the end of the primary term if the entirety of the leased

Case No. 23 MO 0010

premises is not in a single unit (unless it is in a different unit or otherwise maintained, such as by direct drilling of the unpooled property).

**{¶33}** Sentence 1 of ¶ 17 did not modify the effect of ¶ 11 (right to surrender parts at any time) and ¶ 12 (lease remains in full force and effect as to any part of premises in a producing pool). The third and fourth sentences of the very addendum clause at issue contemplate pooling less than all acreage and specifically provide the consequences of release of unpooled acreage. *Compare American Energy-Utica,* 5th Dist. Guernsey No. 17 CA 000028 (where the lease addendum simply added a clause prohibiting pooling without prior written consent). Sentences three and four of ¶ 17 are not prefaced with the proviso such as: "Where the premises are pooled with prior written consent * * *."

**{¶34}** Instead, sentence three says "Any" drilling or production from the pooled unit continues the lease in full force and effect as to that part of the leased premises in the unit, and sentence four says leased premises not contained in a pooled unit can be maintained two years after the primary term's expiration (unless producing or included in one or more pooled units). The lease provides the remedy of *partial* surrender in the form of a release of the unpooled acreage. The first sentence of ¶ 17 is not a topical sentence creating a condition precedent to the triggering of the Pugh clause; it was a covenant followed by its ramifications. Accordingly, Appellant is not entitled to declaration that there was a breach of lease entitling them to some remedy outside the one specified in the lease (surrender and release of the *unpooled* acreage). The trial court's decision is therefore affirmed.

**{¶35}** This ruling essentially subsumes the alternative arguments on Appellant's claims on full lease termination and trespass on pooled acreage. In the trial court, Appellee's summary judgment motion alternatively raised independent arguments on these claims in case the argument against Appellant's threshold theory failed. Appellant's brief addresses these claims in case their threshold argument succeeded on appeal. As the trial court granted summary judgment for Appellee on the first theory to dispose of all claims, the court did not reach the alternative theories.

**{¶36}** Nevertheless, contrary to Appellant's argument, we point out that forfeiture of the entire lease could not have been warranted (even if we had agreed with the theory

of an actionable breach upon proof of damages to the unpooled acreage).[1] Notably, the sentence in ¶ 17 (which Appellant says governs all other provisions) states prior consent is required if less than the entirety is included "in any pooled unit formed" (without mentioning later pooling into other units or drilling into the unpooled acreage). Terminating the entire lease for pooling less than all acreage without prior consent at the moment such pooling occurs would conflict with the habendum clause that the lease shall remain in force for a primary term of five years. *See, e.g., Summitcrest*, 2016-Ohio-888 at ¶ 38. Apparently realizing this, Appellant seemingly acknowledges ¶ 17 takes inventory of the situation at the end of the primary term (or at the end of the primary term plus two years), as sentence four of ¶ 17 speaks of a situation where the entirety is not in a single unit at the end of this period and provides a savings ability to include the other land in other units or otherwise maintain it (such as by drilling).

**{¶37}** In any event, ¶ 17 does not express there will be lease termination as to producing pooled acreage. Furthermore, there is no claim for breach of an implied covenant or allegation of inadequate legal remedies, and lease termination is not to be implied as a contractual term. As stated above, "forfeitures are abhorred" under Ohio law. *Belmont Hills Country Club*, 7th Dist. Belmont No. 13 BE 18 at ¶ 46. *See also State ex rel. Falke,* 40 Ohio St.3d at 73. "Where certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. Under such a lease, the remedy for a breach of an implied covenant, without more, is damages, and not forfeiture of the lease, in whole or in part." *Beer*, 61 Ohio St.2d at 121-122 (even when a breach of an implied covenant to reasonably develop is alleged and actionable, forfeiture can only be utilized if the legal damages are inadequate). There is no support for ignoring oil and gas law on forfeiture and terminating an entire lease merely where a breach of a covenant is found to be actionable. Even applying general law cited by Appellant, there is no indication a failure to pool 14 out of 80 acres could relieve the other party from being bound by the contract as to the pooled acreage, where a well on pooled land is producing from part of the leased

---

[1] We include this section to avoid any potential for remand to this court and in case Appellant intended to argue the trial court should not have treated the first argument as a threshold argument to the issue of entire lease forfeiture (and the resulting claim of trespass on pooled acreage).

premises and royalties are being accepted. Consequently, Appellant's arguments are without merit.

{¶38} For the foregoing reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

D'Apolito, P.J., concurs.

[Cite as *SJBK, L.L.C. v. Northwood Energy Corp.*, 2023-Ohio-4729.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**